### SMITH CORONA CORPORATION, Plaintiff,

### v.

### UNITED STATES, Defendant,

### and

Brother Industries, Ltd., Brother International Corp., Nakajima All Co., Ltd., Canon Inc., Canon U.S.A., Inc., Silver Seiko, Ltd., Silver Reed America, Inc., Matsushita Electric Industrial Co., Ltd., Kyushu Matsushita Electric Industrial Co., Ltd. and Panasonic Company and Panasonic Industrial Company, Divisions of Matsushita Electric Corporation of America, Intervenor–Defendants.

Consolidated Court No. 87–02–00157.

United States Court of International Trade.

Feb. 3, 1989.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr. and John M. Breen, Washington, D.C., for plaintiff.

John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., Velta A. Melnbrencis, and Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, New York City, Jean Heilman Grier, Washington, D.C., for defendant.

Tanaka Ritger & Middleton, H. William Tanaka and Patrick F. O'Leary, Washington, D.C., for intervenor-defendants Brother Industries, Ltd. and Brother Intern. Corp.

McDermott, Will & Emery, R. Sarah Compton and Patrick J. Cumberland, Washington, D.C., for intervenor-defendant Nakajima All Co., Ltd.

Covington & Burling, Harvey M. Applebaum and David R. Grace, Washington, D.C., for intervenor-defendants Canon Inc. and Canon U.S.A., Inc.

Willkie Farr & Gallagher, Christopher A. Dunn and Zygmunt Jablonski, Washington, D.C., for intervenor-defendants Silver Seiko, Ltd. and Silver Reed America, Inc.

Weil, Gotshal & Manges, Stuart M. Rosen and Karin M. Burke, New York City, for intervenor-defendants Matsushita Electric Indus. Co., Ltd., Kyushu Matsushita Elec. Indus. Co., Ltd. and Panasonic Co. and Panasonic Indus. Co., Divisions of Matsushita Elec. Corp. of America.

## MEMORANDUM & ORDER

AQUILINO, Judge:

In the light of the court's slip op. 88–127, 12 CIT ——, 698 F.Supp. 240 (Sept. 20, 1988), the International Trade Administration, U.S. Department of Commerce ("ITA") has determined that portable electric typewriters incorporating text memories are within the scope of a May 1980 antidumping-duty order *sub nom. Final Results of Revised Scope Determination for Antidumping Duty Order on Portable Electric Typewriters from Japan Pursuant to Court Remand* (Nov. 23, 1988). The ITA further states therein:

Since we are not changing, but only clarifying, the scope of the antidumping order, our decision must apply to all un-liquidated entries of portable electric typewriters incorporating text memory and portable electric typewriters incorporating a calculating mechanism. When the judicial review of ... *Final Results of Antidumping Duty Administrative Review*, 52 Fed.Reg. 1504 (Jan. 14, 1987) has been completed and the Department's determinations are finally affirmed by the courts, we will publish our redetermination in the *Federal Register*, and order Customs to suspend liquidation of all entries of such merchandise.

In other words, while determining that portable electric typewriters which possess either a calculator or text memory are within the ambit of the 1980 order, "until the appellate court rules, there will be no suspension of liquidation", to quote from page 8 of Defendant's Memorandum in Partial Opposition to Motion of Smith Corona for Final Judgment, Remanding the Action for Suspension of Liquidation, or, in the Alternative, for Preliminary Injunction. The appellate court referred to is the U.S. Court of Appeals for the Federal Circuit, to which any appeals from this court, of course, lie. As the lengthy title of defendant's memorandum indicates, the plaintiff has interposed a motion for entry of final judgment and for remand for administrative suspension of liquidation or, in the alternative, for an injunction to the same end. The motion necessitates brief recapitulation of the proceedings to date in this case.

### I

Plaintiff's amended complaint contains ten counts, the first seven of which are directed at the administrative review conducted by the ITA pursuant to 19 U.S.C. § 1675 of imports of Brother and Silver Seiko portable electric typewriters ("PETs") for the period May 1, 1981 through April 30, 1982. The remaining counts deal with the scope of the underlying antidumping-duty order. They were "bifurcated" upon consent of the parties for judicial review and resolution first.

The plaintiff made a motion for judgment on the agency record on those three

counts. The defendant responded with a concession that "its determination that PETs incorporating calculators or text memory were specifically excluded from the original investigation and order is not supported by substantial evidence in the administrative record."[1] The intervenor-defendants took the position that substantial evidence did in fact exist in support of the agency's determination. After careful review of the record at their insistence, however, the court was unable to discern such evidence, whereupon the scope issues were remanded to the ITA for reconsideration per slip op. 87–145, 11 CIT ——, 678 F.Supp. 285 (1987).

Following further proceedings, the ITA issued its *Final Results of Revised Scope Determination for Antidumping Duty Order on Portable Electric Typewriters from Japan Pursuant to Court Remand* (March 18, 1988), wherein it concluded that PETs with calculators were covered by the original order but that those with text memories were not. The Brother intervenor-defendants contested the first conclusion, while the plaintiff complained about the other.

Review of the entire, voluminous record compiled below led the court to conclude (in slip op. 88–127) that

the determination of the ITA after remand that portable electric typewriters incorporating calculators are within the scope of the *Antidumping Duty Order on Portable Electric Typewriters from Japan*, 45 Fed.Reg. 30,618 (May 8, 1980), is supported by substantial evidence on the record and is in accordance with law, but the determination of the agency after remand that portable electric typewriters with text memories are not within the scope of the aforesaid antidumping-duty order is not supported by substantial evidence on the record, and that determina-

tion is therefore ... reversed.... 12 CIT at ——, 698 F.Supp. at 254.

The ITA was directed to issue a redetermination that PETs with text memories are within the 1980 order's scope, but before it complied (on November 23, 1988) with the court's interlocutory order, three intervenor-defendants had noticed what have been characterized as "protective" appeals.[2]

As for the defendant, its counsel recommend in their present memorandum (page 8) "that no appeal of the ... issue (concerning PETs with text memory) be prosecuted", while the plaintiff has served and filed along with its motion for final judgment a "Notice of Abandonment of Claims" on the remaining, unresolved seven counts of its amended complaint.

## II

The defendant consents to entry of final judgment. All the intervenor-defendants save Brother Industries, Ltd. and Brother International Corporation state that they "do not oppose [plaintiff]'s apparent goal, that is dismissal of counts 1 through 7, but submit that [it]s Notice is improper".[3] They also claim uncertainty as to whether slip op. 88–127 was a final judgment, expressing the view that, if it was, the timely filing of the notices of appeal (on behalf of the three intervenor-defendants) has divested the court of jurisdiction. The point is pressed more directly in papers filed on behalf of Brother.

■ To be sure, timely appeal of a final decision of the Court of International Trade within the meaning 28 U.S.C. § 1295(a)(5) or of an interlocutory decision of the Court pursuant to 28 U.S.C. § 1292(d) can divest it of jurisdiction, but neither avenue has been traveled to date here. While the par-

---

1. Defendant's Response to Plaintiff's Motion for Judgment on the Agency Record, p. 5 (Sept. 14, 1987).

2. The plaintiff indicates that it has moved to dismiss the appeals bearing Federal Circuit docket numbers 89–1140 and 89–1141 for failure to meet the test of finality for purpose of appeal.

3. Intervenor–Defendants' Memorandum in Opposition to Plaintiff Smith Corona Corporation's Motion for Final Judgment, Remanding the Action for Suspension of Liquidation, or, in the Alternative, for Preliminary Injunction and a Notice of Abandonment of Claims, p. 7.

ties agreed to resolution of the scope issues first, none sought till now entry of an appealable order of the kind contemplated by CIT Rule 54(b), which bears recitation, to wit:

> *Judgment Upon Multiple Claims or Involving Multiple Parties.* When more than one claim for relief is presented in an action, ... or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

And no party has sought certification of the court's September 20, 1988 interlocutory order for appeal to the Federal Circuit pursuant to 28 U.S.C. § 1292(d)(1).

Be that as it may, the plaintiff now seeks entry of judgment—in the stated hope of full government compliance with the results thus far, and with dismissal of its other pleaded causes of action. Since in this court's view no judgment or other appealable order has yet entered[4], it has jurisdiction to fashion such a decree. *Cf. Fundicao Tupy S.A. v. United States*, 841 F.2d 1101 (Fed.Cir.1988).

■ The intervenor-defendants are correct, however, in questioning plaintiff's proposed "abandonment" of its unresolved claims in pursuit of a judgment. CIT Rule 41(a) provides that, once issue has been joined, voluntary dismissal is effectuated only through filing of a stipulation thereof, signed by all parties who have appeared in the action, or by order of the court, viz.,

> ... [A]n action shall not be dismissed by the plaintiff unless upon order of the court, and upon such terms and conditions as the court deems proper.

Suffice it to state here that the court deems plaintiff's present motion to be one made, in pertinent part, pursuant to this provision of Rule 41(a)(2) notwithstanding a strained attempt at pages 9–12 of plaintiff's reply memorandum to duck this rule —in an action where it was the primary proponent of severance of its seven alleged causes of action. In any event, the court concludes that grant of dismissal of them would clearly be in the interests of a just and efficient termination of this litigation.

### III

■ As indicated above, the defendant equates termination, at least in this case, with issuance of a mandate by the circuit court of appeals. While the final remand results state that the ITA's "decision must apply to all unliquidated entries of portable electric typewriters incorporating text memory and portable electric typewriters incorporating a calculating mechanism", the agency is apparently unwilling to ordain a suspension of liquidation pending any judicial review at the next, appellate level.

Defendant's stance is premised exclusively in this regard on *Melamine Chemicals, Inc. v. United States*, 732 F.2d 924 (Fed. Cir.1984). In that case, the ITA appealed a

---

**4.** Proceedings of the kind that are this case are complex, and the concept of finality has been characterized as "slithery, tricky." *United States v. 243.22 Acres of Land in Town of Babylon*, 129 F.2d 678, 680 (2d Cir.1942), *cert. denied sub nom. Lambert v. United States*, 317 U.S. 698, 63 S.Ct. 441, 87 L.Ed. 558 (1943). The responses to its motion for final judgment etc. have ostensibly caused the plaintiff to submit a further Motion for Leave to File Response in the apparent belief that its main one is not "dispositive" within the meaning of CIT Rule 7(d), which permits a reply in support of such a motion as a matter of right. While the court does not share such a belief in view of Rule 7(g) and the precise nature of the relief requested, if it did, the motion for leave to file would be granted—as well-grounded. That is, plaintiff's Response to Memoranda in Opposition to Suspension of Liquidation is received, and will be considered by the court.

CIT remand of a final negative determination of dumping. The court of appeals vacated and reversed the interlocutory remand order and also opined that the

administrative handling of the involved entries ... can be effected only by (1) a preliminary injunction pursuant to 19 U.S.C. § 1516a(c)(2), or (2) a *final* court decision adjudicating the legality, *vel non*, of the challenged determination. 19 U.S.C. § 1516(a)(e).[5]

Of course, subsequent decisions like *Badger–Powhatan, A Division of Figgie International, Inc. v. United States*, 808 F.2d 823 (Fed.Cir.1986), and *Cabot Corporation v. United States*, 788 F.2d 1539 (Fed.Cir.1986), indicate that a remand order is not a final one. But this does not mean that a party before this court is at liberty to ignore such an order, whether or not subject to further judicial review.

Obviously, plaintiff's goal in abandoning its remaining, pleaded claims and praying for a final judgment is not to facilitate any appeal, rather to obtain a final court decision adjudicating the legality, *vel non,* of the challenged determination. That the judgment which will enter in conjunction with this memorandum is such a decision is clear to this court.[6] Also clear is that the court may fashion the judgment in such a manner as to assure its enforcement. But no judgment can extend further than justice requires, and justice does not obligate the ITA to direct the Customs Service now to suspend liquidation under the guise of this case. To repeat slip op. 87–145 in this regard:

... [T]he provision for imposition of antidumping duties if the administering authority determines that a class or kind of foreign merchandise is being sold in the United States at less than fair value, 19 U.S.C. § 1673 (1984), is silent on the subject of suspension of liquidation. Rather, under the statute now in effect suspension is mandated after either a preliminary or a final affirmative determination of the ITA of sales at less than fair

value of the merchandise which is the subject of its investigation. *See* 19 U.S.C. § 1673b(d) and § 1673d(c)(1)(B). Neither such affirmative determination as to the typewriters in question has been made by the administering authority. 11 CIT at ——, 678 F.Supp. at 293.

Indeed, the plaintiff may have lost sight of the fact that the investigation which is the foundation of this case focused on PETs imported during the period May 1, 1981 through April 30, 1982, a time when the record shows that the typewriters covered by the scope issues did not exist—and therefore could hardly have been subject to liquidation after entry then.

### IV

■ As an alternative approach, the plaintiff has applied for an injunction. The defendant does not oppose suspension of liquidation via this route, but the intervenor-defendants do.

This is plaintiff's second attempt at the same relief. At the outset of the case, it presented evidence and legal argument in open court. That presentation led the court to find the requisite likelihood of success on the merits of the scope issues, as discussed at length in slip op. 87–145, familiarity with which is presumed herein. In fact, the results on remand have confirmed the correctness of plaintiff's position.

This and other courts have held that the showing of such likelihood is in inverse proportion to the severity of the injury the moving party will sustain without injunctive relief, but the court is unable to hold that success on the merits entirely dispels positive showings of irreparable harm, a balance of hardship in favor of the relief, or of advancement of the public interest through grant of an injunction. The plaintiff did not meet these three requirements the last time, and its presentation is even less persuasive now. For example, the to-

---

5. 732 F.2d at 934 (emphasis in original, footnote omitted).

6. Counsel for the defendant intimate that further judicial review will not be sought on behalf of the ITA.

tality of its stated position on direct harm is as follows:

### B. *Irreparable Injury*

Given that every imported portable typewriter that is liquidated will escape the antidumping duty order, each such entry is by definition irreparable. Even if the injury of each additional typewriter itself is small, that this condition has persisted another year and that Smith Corona apparently will continue to suffer in the marketplace from the presence of imports that unfairly circumvent the antidumping duty order is surely grounds for injunctive relief.[7]

Moreover, the plaintiff opposes a motion by intervenor-defendants for oral argument on its present application for an injunction.

If there is nothing more to be said by the plaintiff, the court is left with little alternative but to deny its application (thereby obviating any need to grant intervenor-defendants' motion to be heard beyond their papers already on file).

As commenced, this case covered (in counts 1–7) imports of Brother and Silver Seiko PETs for the period May 1, 1981 to April 30, 1982. At plaintiff's request, the court enjoined liquidation of those entries—over the opposition of Brother but not of either the defendant or Silver Seiko. That relief was granted essentially on the basis of *Zenith Radio Corporation v. United States*, 710 F.2d 806, 810 (Fed.Cir.1983), wherein the court concluded

that liquidation would ... eliminate the only remedy available to Zenith for an incorrect review determination by depriving the trial court of the ability to assess dumping duties on Zenith's competitors in accordance with a correct margin on entries in the '79–'80 review period. The result of liquidating the '79–'80 entries would not be economic only. In this case, Zenith's statutory right to obtain judicial review of the determination

would be without meaning for the only entries permanently affected by that determination. In the context of Congressional intent in passing the Trade Agreements Act of 1979 and the existing finding of injury to the industry underlying T.D. 71–76, we conclude that the consequences of liquidation do constitute irreparable injury.

Now that the plaintiff is abandoning its claims regarding the Brother and Silver Seiko PET entries for 1980–81, the injunction suspending their liquidation can be vacated. The point that remains valid, however, is that suspension was necessary to preserve the efficacy of any judicial relief as to them, at least from plaintiff's perspective. No doubt this is why the defendant did not oppose suspension at the time and also why it does not now oppose an injunction in the recently-filed, subsequent action *Smith Corona Corporation v. United States*, CIT No. 88–11–00866, which complains about the results of the ITA's administrative review of imports of PETs from Japan for periods April or May 1982 through April 1986 and May 1985 through April 1986. During those periods, PETs with text memories or calculators were imported and may be subjected to ITA review. *See Portable Electric Typewriters from Japan Final Results of Antidumping Duty Administrative Review*, 53 Fed. Reg. 40,926, 40,927 (Oct. 19, 1988).

Be that matter as it may, the plaintiff in this one is entitled to final judgment on the causes of action which have been resolved, but it is not entitled to suspension of liquidation[8] based on that judgment. Hence, that part of plaintiff's motion which seeks entry of a final judgment is hereby granted; the remainder of the motion is denied, and any interlocutory matters remaining in this case are deemed decided in accordance with this memorandum.

So ordered.

7. Plaintiff's Memorandum of Points and Authorities, p. 12.

8. On the other hand, the facts and circumstances of the subsequent action, namely, No. 88–11–00866, when viewed in the light of *Zenith Radio Corporation v. United States*, 710 F.2d 806 (Fed.

Cir.1983), indicate that entry of a preliminary injunction, suspending liquidation is appropriate, and this court will therefore grant such relief in that action in the manner requested by the plaintiff and not opposed by the defendant.

## JUDGMENT

This case having been duly submitted for decision, and the court, after due deliberation, having rendered decisions herein; Now, therefore, in conformity with said decisions, it is

ORDERED, ADJUDGED and DECREED that defendant's Final Results of Revised Scope Determination for Antidumping Duty Order on Portable Electric Typewriters from Japan Pursuant to Court Remand dated March 18, 1988 be, and they hereby are, affirmed as to portable electric typewriters incorporating calculators; and it is further

ORDERED, ADJUDGED and DECREED that defendant's Final Results of Revised Scope Determination for Antidumping Duty Order on Portable Electric Typewriters from Japan Pursuant to Court Remand dated November 23, 1988 be, and they hereby are, affirmed as to portable electric typewriters incorporating text memories; and it is further

ORDERED, ADJUDGED and DECREED that count 1 through count 7 of the amended complaint be, and each hereby is, dismissed; and it is further

ORDERED that the preliminary injunction which was entered in February 1987 in regard to the matters at issue in counts 1 through 7 of the amended complaint be, and it hereby is, vacated.