NAKAJIMA ALL CO., LTD., Plaintiff,

v.

The UNITED STATES, Defendant,

and

Smith Corona Corporation, Intervenor–Defendant.

Court No. 91–12–00853.

United States Court of International Trade.

Nov. 10, 1993.

Patton, Boggs & Blow, Michael D. Esch and Ethan S. Burger, Washington, DC, for plaintiff.

Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Michael S. Kane, and Jeffrey C. Lowe, U.S. Dept. of Commerce, Washington, DC, of counsel, for defendant.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr. and Charles A. St. Charles, Washington, DC, for intervenor defendant.

## Opinion

AQUILINO, Judge:

Failure of the International Trade Administration, U.S. Department of Commerce ("ITA") to administer the Trade Agreements Act of 1979, as amended, in the precise manner Congress intended has spawned this action for relief from the *Final Results of Antidumping Duty Administrative Reviews: Portable Electric Typewriters From Japan,* 56 Fed.Reg. 56,393 (Nov. 4, 1991). The issue is whether a final decision of this court has effect in the face of the administrative inaction.

I

The plaintiff is an exporter of portable electric typewriters which are or have been subject to an antidumping-duty order published at 45 Fed.Reg. 30,618 (May 9, 1980). Since then, technology has transformed the covered merchandise from electro-mechanical into electronic, thereby engendering protracted litigation as to the scope of the original order and administrative reviews thereof. Those proceedings led to determinations by the ITA that the electronic machines are within the order's ambit[1] and also that those possessed of electronic calculators[2] and/or text memories[3] are covered as well. Those determinations, in turn, led the petitioner-plaintiff Smith Corona Corporation to elect to abandon the remainder of its court com-

plaint about the other results of an administrative review of the antidumping-duty order published at 52 Fed.Reg. 1,504 (Jan. 14, 1987) and thus to move for entry of final judgment on the scope issues. That motion was granted *sub nom. Smith Corona Corporation v. United States,* 13 CIT 96, 706 F.Supp. 908 (1989). Accompanying the plaintiff's motion were proposed forms of an order and of an injunction, each of which decreed that the U.S. Customs Service "suspend liquidation of all entries of Japanese portable electric typewriters incorporating text memory or calculating mechanisms [devices]".

Not only did the exporters and importers of that merchandise, including the plaintiff herein, appear in opposition to issuance of such a decree, three had already noticed "protective" appeals prior to entry of the final, appealable judgment. *See id.,* 13 CIT at 98–99 and n. 2, 706 F.Supp. at 910–11 and n. 2. On their part, counsel for the defendant recommended against an appeal by the ITA, but they also indicated an unwillingness to recommend that the agency ordain a suspension of liquidation pending the outcome of any other appeal(s) to the Federal Circuit.

The Trade Agreements Act of 1979, as amended, provides in regard to ITA determinations of the kind at issue in the Smith Corona case[4] that the

Court of International Trade may enjoin the liquidation of some or all entries of merchandise covered by [them] ... upon a request by an interested party for such relief and a proper showing that the requested relief should be granted under the circumstances.

19 U.S.C. § 1516a(c)(2).

Notwithstanding the final judgment in favor of Smith Corona as to scope, this court concluded that the record developed did not

---

1. *See Portable Electronic Typewriters From Japan; Final Results of Administrative Review of Antidumping Duty Order,* 48 Fed.Reg. 7,768, 7,769–70 (Feb. 24, 1983).

2. *See Final Results of Revised Scope Determination for Antidumping Duty Order on Portable Electric Typewriters from Japan Pursuant to Court Remand* (March 18, 1988).

3. *See Final Results of Revised Scope Determination for Antidumping Duty Order on Portable Electric Typewriters from Japan Pursuant to Court Remand* (Nov. 23, 1988).

4. *See* 19 U.S.C. § 1516a(a)(2)(B)(vi).

reflect the requisite "proper showing" for an injunction. *See* 13 CIT at 101–02, 706 F.Supp. at 912–13. Moreover, the court concluded that, while it

> may fashion [a] judgment in such a manner as to assure its enforcement[,] ... no judgment can extend further than justice requires, and justice does not obligate the ITA to direct the Customs Service now to suspend liquidation....

13 CIT at 100–01, 706 F.Supp. at 912–13. The conclusion was based upon the following analysis:

> ... [T]he provision for imposition of antidumping duties if the administering authority determines that a class or kind of foreign merchandise is being sold in the United States at less than fair value, 19 U.S.C. § 1673 (1984), is silent on the subject of suspension of liquidation. Rather, under the statute now in effect suspension is mandated after either a preliminary or a final affirmative determination of the ITA of sales at less than fair value of the merchandise which is the subject of its investigation. *See* 19 U.S.C. § 1673b(d) and § 1673d(c)(1)(B). Neither such affirmative determination as to the typewriters in question has been made by the administering authority....

> Indeed, the plaintiff may have lost sight of the fact that the [review] which is the foundation of this case focused on PETs imported during the period May 1, 1981 through April 30, 1982, a time when the record shows that the typewriters covered by the scope issues did not exist—and therefore could hardly have been subject to liquidation after entry then.

13 CIT at 101, 706 F.Supp. at 912, quoting from *Smith Corona Corporation v. United States,* 11 CIT 954, 964, 678 F.Supp. 285, 293 (1987). The conclusion was also reached in recognition of the statutory mandate governing the ITA in the aftermath of a case like *Smith Corona,* to wit:

**(e) Liquidation in accordance with final decision**

If the cause of action is sustained in whole or in part by a decision of the United States Court of International Trade or of the United States Court of Appeals for the Federal Circuit—

(1) entries of merchandise of the character covered by the published determination of the Secretary, the administering authority, or the Commission, which is entered, or withdrawn from warehouse, for consumption after the date of publication in the Federal Register by the Secretary or the administering authority of a notice of the court decision, and

(2) entries, the liquidation of which was enjoined under subsection (c)(2) of this section,

shall be liquidated in accordance with the final court decision in the action. *Such notice of the court decision shall be published within ten days from the date of the issuance of the court decision.*

19 U.S.C. § 1516a(e) (emphasis added). A similar provision requiring publication in the Federal Register within ten days from the date of issuance of a decision of this court *or* of the Federal Circuit "not in harmony with" the ITA is found in subsection (c)–(1) of section 1516a. The ITA failed to carry out this mandate, which, on its face, is executory. Nonetheless, in its decision on the appeals of the other parties, the Federal Circuit states, erroneously, that this court "withheld publication of notice of its decision". *Smith Corona Corporation v. United States,* 915 F.2d 683, 688 (Fed.Cir.1990). Perhaps this was due to misrepresentation(s) by one or more of the appellants. For example, plaintiff's current complaint alleges, incorrectly, in paragraph 7 that "this court held ... that the ITA was not required to publish a notice of the adverse court decision until judicial review, including appellate review, was completed", while its current reply memorandum argues, again in error, that this court "*upheld* the Department's refusal to publish the Federal Register notice".[5] Publication, which is exclusively the government's obligation under the foregoing sections of the

---

5. Plaintiff's Memorandum in Reply to Defendant's and Defendant–Intervenor's Opposition to Plaintiff's Motion for Judgment on the Agency

Record [hereinafter referred to as "Plaintiff's Reply Memorandum"], p. 11 (emphasis in original).

Trade Agreements Act, was not an issue for the court. Rather, the question was suspension of liquidation of entries of merchandise not yet in existence during the period of administrative review which was the jurisdictional underpinning of the case and in the absence of a proper showing for the extraordinary relief which is a preliminary injunction. Furthermore, this court has yet to issue a decision not intended to be obeyed in accordance with law upon filing.

In any event, the opinion of the court of appeals attempted to clarify the matter as follows:

Liquidation of goods is provided for in 19 U.S.C. § 1516a(c)(1), which requires prompt publication of notice of the court's decision.... This provision makes clear that the decision of the Court of International Trade, or of the Federal Circuit, is of controlling effect when rendered, and that each such decision must be published within ten days after its issuance. In *Timken v. United States*, 893 F.2d 337 (Fed.Cir.1990) we held that § 1516a(c)(1) requires publication of notice of a contrary decision of the Court of International Trade, and requires suspension of liquidation upon publication of the notice. *Id.* at 340.

Such suspension is not automatically lifted when the decision of the Court of International Trade is appealed to the Federal Circuit. Suspension of liquidation continues until a "conclusive" court decision is reached, *i.e.*, a decision that is not subject to further appeal or collateral attack. 19 U.S.C. § 1516a(e); *Timken*, 893 F.2d at 339.

The February 3, 1989 decision of the Court of International Trade was a decision within the scope and meaning of § 1516a(c)(1). Notice of the Court of International Trade decision should have been published within ten days thereafter, and liquidation should have been suspended.

*Id.*, 915 F.2d at 688.

## II

Comes now the plaintiff, alleging in its complaint herein that on April 5, 1990, or prior to the foregoing decision of the Federal Circuit, the ITA did indeed publish notice in the Federal Register of this court's final judgment of February 3, 1989 [6]—in the light of the intervening, apposite opinion in *Timken Company v. United States*, 893 F.2d 337 (Fed.Cir.1990). The complaint continues:

16. Exports by Nakajima of portable electric typewriters with text-memory from Japan that were entered on or after February 3, 1989, and before April 5, 1990, and were unliquidated as of April 5, 1990, were subject to the ITA's order of suspension of liquidation under the terms of the ITA's April 5, 1990 notice. These shipments were thereafter reviewed in the context of the ITA's review proceeding for the 1988–1990 review period and antidumping duties calculated for these shipments. These entries were not subject to any form of injunctive relief enjoining liquidation pending judicial review of the ITA scope ruling of January 14, 1987.

17. Over Nakajima's objection, the ITA held in its notice of final results of the administrative review for the 1988–90 review period that its April 5, 1990 notice of suspension could be applied retroactively to imports entered before the notice was published.

The plaintiff has interposed a motion for judgment on the agency record to the effect that

this matter be remanded to the Department of Commerce to revise its final results determination for the 1988–1990 administrative review period by excluding from the scope of review of the antidumping duty order on Portable Electric Typewriters from Japan the automatic typewriters exported by plaintiff and entered on or before April 5, 1990, and providing that such merchandise shall be liquidated without assessment of antidumping duties;

to quote from the proposed form of order submitted with the motion.

6. *See* 55 Fed.Reg. 12,701.

Plaintiff's complaint fairly characterizes the lie of this action.[7] The report of the ITA's final results shows that the years reviewed were May 1 to April 30 of 1988–89 and of 1989–90. Margins of 0.90 and 3.87 percent are reported for Nakajima for those years, respectively. *See* 56 Fed.Reg. at 56,-400. With regard to the issue now joined, the agency's report states:

**Scope of the Review**

In accordance with the Court of International Trade's ... decision in *Smith Corona Corp. v. United States,* 706 F.Supp. 908 (CIT 1988) aff'd 915 F.2d 683 (Fed.Cir. 1990) that portable automatic typewriters ("PATs") and PETs with a calculating mechanism are within the scope of the order, on April 5, 1990, the Department published in the Federal Register: Portable Electric Typewriters; Court of International Trade Decision Concerning the Scope of the Anti–Dumping Duty Order (55 FR 12701) ..., a notice suspending liquidation of all unliquidated entries of PATs and PETs incorporating a calculating mechanism, entered, or withdrawn from warehouse, for consumption on or after February 3, 1989, the date of the CIT decision. On September 26, 1990, the Court of Appeals for the Federal Circuit ... affirmed the CIT's decision and established conclusively that PATs and PETs with a calculating mechanism are within the scope of the antidumping duty order on PETs from Japan. See, Portable Electric Typewriters from Japan; Court of Appeals for the Federal Circuit Decision Concerning the Scope of the Antidumping Duty Order (55 FR 42423, October 19, 1990). Therefore, beginning February 3, 1989, these reviews cover PETs, PATs, and PETs incorporating a calculating mechanism.

56 Fed.Reg. at 56,393–94. And the ITA concludes that it "will instruct the Customs Service to assess antidumping duties on all appropriate entries." [8]

## A

The written arguments of counsel submitted in support of (and in opposition to) plaintiff's motion are so well presented they have obviated any need for additional, oral argument. But they have not obviated listing of the fundamentals at bar:

First, plaintiff's attempt to cast this action as one to foreclose "retroactive application of a court decision" [9] is off base. By way of comparison, as long ago as December 31, 1987 this court opined that the administrative record did not support exclusion of plaintiff's merchandise from the ambit of the 1980 order,[10] yet no one is now demanding that liquidation of entries since that date entail antidumping duties. While the gravamen of that opinion remains the law, to make such a demand would, of course, give rise to genuine concerns regarding retroactive enforcement.

Secondly, according to the record, following that opinion's deference to the ITA the plaintiff appears to have had a full and fair opportunity to convince the agency during the remand proceedings and then this court anew during subsequent judicial review of its continuing position on the merits. Only after it had failed to do so did a final adverse judgment enter. That the plaintiff availed itself of the right to appeal further to the Federal Circuit from that judgment hardly supports a complaint now of retroactive enforcement.

Third, if that judgment has been enforceable since its entry on February 3, 1989, all

---

7. The intervenor-defendant argues that the plaintiff should have instituted judicial review within 30 days of the mailing of the ITA's determination to publish notice on April 5, 1990 of this court's final judgment and that jurisdiction over this later-commenced action is now lacking. However, as quoted in the text *infra,* that determination is of critical moment to the November 4, 1991 final results timely challenged herein. Hence, jurisdiction properly exists pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(I), (B)(iii) and 28 U.S.C. § 1581(c).

8. 56 Fed.Reg. at 56,400. The court notes in passing that, with the consent of the defendant, a preliminary injunction has been granted, suspending liquidation pending this decision. That injunction lists four entries—on April 25, November 27 and December 9 and 18, 1989.

9. Plaintiff's Reply Memorandum, p. 14.

10. *See Smith Corona Corporation v. United States,* 11 CIT 954, 678 F.Supp. 285 (1987).

that remains is to carry out its mandate, *nunc pro tunc* prospectively [11].

Fourthly, since, as the court of appeals confirmed, that judgment was not merely advisory, the representation that "during the fourteen-month period at issue here, from February 1989 through April 5, 1990, Nakajima was entitled to rely on the Department's original scope determination as the controlling determination applicable to merchandise entered during this period" [12] is wholly unfounded. Just as the government is not at liberty to disregard a court judgment, neither are other parties like the plaintiff.

Fifth, to the extent plaintiff's papers make pretensions of harm, there is no showing of adverse reliance on the court's denial of immediate suspension of liquidation. On the contrary, it was the plaintiff which vigorously, and successfully, opposed Smith Corona's demand therefor.[13]

Finally, to the extent the plaintiff is claiming lack of notice due to the absence of publication in the Federal Register, the actuality of its involvement in the subject for that publication undermines the import of any such claim.

On the other side, the defendant now admits that it was "error" in not having published notice of the final judgment within ten days of February 3, 1989, but it argues that that error was "harmless".[14] In view of the foregoing facts and circumstances, the court concurs. Moreover, as indicated above, the court is not convinced that the lack of prompt publication via the Federal Register renders a decision by it a nullity during the period of administrative inaction. *E.g., Smith Corona Corporation v. United States,* 915 F.2d at 688 ("the decision of the Court of International

Trade ... is of controlling effect when rendered"); H.R.Rep. No. 317, 96th Cong., 1st Sess. 182 (1979), U.S.Code Cong. & Admin.News 1979, p. 381 ("merchandise [to] be liquidated in accordance with the administrative decision if entered prior to the first decision of a court which is adverse to that decision").

### III

In conclusion, it can be fairly stated that the ITA's failure to administer the Trade Agreements Act of 1979, as amended, in the precise manner Congress intended has not given rise to a claim in this action upon which relief can be granted. As the Supreme Court has frequently articulated, "the 'great principle of public policy, applicable to all governments alike, ... forbids that the public interests ... be prejudiced by the negligence of the officers or agents to whose care they are confided.'" *Brock v. Pierce County,* 476 U.S. 253, 260, 106 S.Ct. 1834, 1839, 90 L.Ed.2d 248 (1986), quoting *United States v. Nashville, C. & St. Louis R. Co.,* 118 U.S. 120, 125, 6 S.Ct. 1006, 1008, 30 L.Ed. 81 (1886). Ergo, judgment must be entered, denying plaintiff's motion for judgment on the agency record on its behalf and dismissing the complaint.

### JUDGMENT

This action having been duly submitted for decision; and the court, after due deliberation, having rendered a decision herein; Now, therefore, in conformity with said decision, it is

ORDERED, ADJUDGED and DECREED that plaintiff's motion for judgment on the agency record compiled by the International Trade Administration, U.S. Department of Commerce *sub nom. Final Results of Antidumping Duty Administrative Re-*

---

**11.** The plaintiff is on firm ground in pressing for prospective enforcement, which has been and must be the focus of actions involving newly-developed merchandise, but not, as the plaintiff also contends, as of April 5, 1990.

**12.** Plaintiff's Reply Memorandum, p. 12.

**13.** Indeed, it is plausible that plaintiff's successful opposition resulted in liquidation of entries without imposition of antidumping duties.

**14.** Defendant's Memorandum in Opposition to Plaintiff's Motion for Judgment Upon the Administrative Record *passim.*

**446**

views: *Portable Electric Typewriters From Japan,* 56 Fed.Reg. 56,393 (Nov. 4, 1991) be, and it hereby is, denied; and it is further

ORDERED, ADJUDGED and DE-CREED that this action be, and it hereby is, dismissed.